**PUBLISHED**
Filed: May 29, 2009

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

OHIO VALLEY ENVIRONMENTAL
COALITION; COAL RIVER MOUNTAIN
WATCH; WEST VIRGINIA HIGHLANDS
CONSERVANCY,
    *Plaintiffs-Appellees,*

and

COAL MAC, INCORPORATED,
    *Movant,*

v.

ARACOMA COAL COMPANY; ELK
RUN COAL COMPANY; ALEX
ENERGY, INCORPORATED;
INDEPENDENCE COAL COMPANY,
INCORPORATED,
    *Intervenors/Defendants-Appellants,*

and

MINGO LOGAN COAL COMPANY,
    *Intervenor/Defendant,*

and

UNITED STATES ARMY CORPS OF
ENGINEERS; LIEUTENANT GENERAL
ROBERT L. VAN ANTWERP,
Commander and Chief of
Engineers, U. S. Army Corps of
Engineers;

No. 07-1355 (L)
(3:05-cv-00784;
3:06-cv-00438)

COLONEL DANA R. HURST, District
Engineer, United States Army
Corps of Engineers, Huntington
District; WEST VIRGINIA COAL
ASSOCIATION,

                              *Defendants.*

NATIONAL MINING ASSOCIATION;
KENTUCKY COAL ASSOCIATION;
COAL OPERATORS AND ASSOCIATES,
INC.; ILLINOIS COAL ASSOCIATION;
COLORADO MINING ASSOCIATION;
ALASKA MINERS ASSOCIATION;
VIRGINIA COAL ASSOCIATION; IDAHO
MINING ASSOCIATION; ALABAMA
COAL ASSOCIATION; PENNSYLVANIA
COAL ASSOCIATION; OHIO COAL
ASSOCIATION; INDIANA COAL
COUNCIL, INC.; UTILITY WATER ACT
GROUP; WEST VIRGINIA
DEPARTMENT OF COMMERCE; WEST
VIRGINIA DEPARTMENT OF
ENVIRONMENTAL PROTECTION,
        *Amici Supporting Appellants.*

## ORDER

Appellees have filed a petition for rehearing and rehearing en banc.

A member of the Court requested a poll on the petition for rehearing en banc. Judges Wilkinson, Michael, and Motz voted to grant rehearing en banc. Judges Niemeyer, Gregory,

Shedd, and Duncan voted to deny rehearing en banc. Chief Judge Williams, Judge Traxler, Judge King, and Judge Agee did not participate in the vote.

The petition for rehearing is denied, and, because the poll on rehearing en banc failed to produce a majority of judges in active service in favor of rehearing en banc, the petition for rehearing en banc is also denied. Judge Gregory filed an opinion concurring in the denial of rehearing en banc, in which Judge Shedd joined. Judge Wilkinson filed an opinion dissenting from the denial of rehearing en banc, in which Judge Motz joined. Judge Michael also filed an opinion dissenting from the denial of rehearing en banc, in which Judge Motz joined.

Entered at the direction of Judge Gregory for the Court.

For the Court

/s/ Patricia S. Connor
Clerk

GREGORY, Circuit Judge, concurring in the denial of rehearing en banc:

I recognize and am sympathetic to the significant impact that surface mining has had on Appalachian ecology, but the panel in this case was not called upon to assess the wisdom of that practice. In fact, the scope of our review of environmental challenges to mountaintop removal mining is exceedingly limited given both the complicated statutory regime put in place to regulate that activity and our own circuit precedent.

With the Surface Mining Control and Reclamation Act of 1977, Congress delegated much of the regulation of surface mining operations to the states. *See* 30 U.S.C. § 1201 *et seq.* One of the most significant aspects of federal involvement in surface mining regulation is the issuance of Clean Water Act ("CWA") Section 404 permits by the U.S. Army Corps of Engineers for the disposal of surface mining waste in area stream waters. Over six years ago, in our decision in *Kentuckians for the Commonwealth, Inc. v. Rivenburgh*, 317 F.3d 425 (4th Cir. 2003), this Circuit found that CWA Section 404 did in fact give the Corps the authority to issue such permits. With that precedent in mind, the appeal over which rehearing is now sought asked us to determine only the narrow and rather fact-specific question of whether the Corps abused its discretion in exercising its CWA Section 404 authority to grant four individual fill permits. As the panel opinion more fully explains, the Corps' conduct here did not amount to such an abuse.

Judge Wilkinson's dissent from denial of rehearing en banc suggests that we should hold against the Corps the fact that it is currently working with the EPA to develop a comprehensive functional assessment protocol for use in West Virginia. According to him, this "comes mighty close to an admission that [the Corps] has not been acting properly in its permitting processes." *Infra*, at 5. The Corps has always been candid with this Court about both the fact that it did not have such a protocol in place at the time the permits were issued and that the protocol was in the development process. *See Ohio Valley Envtl. Coal. v. Aracoma Coal Co.*, 556 F.3d 177, 198 (4th Cir. 2009). To use the fact that the Corps is developing this protocol *now* as evidence that it acted improperly *earlier* is of questionable value. This kind of protocol may well be the best way to measure stream function for purposes of 40 C.F.R. § 230.11(e), but the question before us in this appeal was not whether the Corps used the *best* method for measuring stream function. Instead we were asked simply to determine whether the Corps' approach was arbitrary or capricious. 5 U.S.C.

§ 706(2). The panel opinion explains at some length why it was not. *See Ohio Valley Envtl. Coal.*, 556 F.3d at 198-201.

Judge Shedd joins me in this concurrence.

WILKINSON, Circuit Judge, dissenting from the denial of rehearing en banc:

With great respect, I would grant rehearing en banc on the issue of whether the U.S. Army Corps of Engineers abused its discretion when it approved the permits in this case under section 404 of the Clean Water Act. When one peels away some of the technical language and "internal guidance documents," it seems to me the Corps has been fudging on an essential element of its own regulations. Indeed, the government's protestation that it will only now work to develop a stream function assessment protocol comes mighty close to an admission that it has not been acting properly in its permitting processes. And the potentially irreversible effects that the permitted operations will have on the Appalachian ecosystem make en banc review appropriate in this case.

While I would reserve judgment on the ultimate question pending full briefing and argument, I do think the dissenting panel opinion makes a strong case that the Corps acted arbitrarily when it failed to comply with the plain language of its regulations and conducted an inadequate assessment of the environmental impact of permitting mining operations to fill 23 valleys and over 13 miles of headwater streams in the mountains of West Virginia. *See Ohio Valley Envtl. Coal. v. Aracoma Coal Co.*, 556 F.3d 177, 217 (4th Cir. 2009) (Michael, J., dissenting). In particular, the Corps' regulations require it to determine the effect that a proposed operation will have on the "structure and function of the aquatic ecosystem and organisms." 40 C.F.R. § 230.11(e). But the Corps' current practice appears to read the word "function" right out of the regulation. As Judge Michael makes clear, the Corps' failure to identify and measure the impact of mining

operations on stream function poses a real danger to the vitality of the waterways and ecology of the affected areas.

The government's own representations suggest that the Corps' current protocols fail to address stream function. Specifically, the government represents that "the method of analysis the Corps used in this case will soon be replaced by a full functional assessment tool—which OVEC claims the Corps should have used in this case." *Federal Appellants' Resp. to Pet. for Panel Reh'g & Reh'g En Banc* at 9. The government tells us that this new functional assessment tool will "consider physical, chemical and biological functions" as well as "contributions from the entire upstream watershed." *Id.* at 1. The government further assures us that "the Corps and EPA are also reviewing how these kinds of section 404 permits will be analyzed in the future," and that "nothing in the [panel] opinion will constrain the Corps and EPA" from implementing "additional environmental safeguards." *Federal Appellants' Resp.* at 1-2.

The government argues that these new protocols obviate the need for en banc review in this case. That argument puts the cart before the horse. Rather than suggest that en banc review is unnecessary, the government's pledge to account for stream function in the future candidly admits that the Corps shortchanged stream function in the past and thereby skirted the requirements of its regulations in issuing the permits before us, an action which itself will have a profound impact upon Appalachian waterways. *See Ohio Valley Envtl. Coal.*, 556 F.3d at 219, 226 (Michael, J., dissenting).*

I do welcome and appreciate the government's views in

---

*This is not a matter of penalizing the government by admitting evidence that it has adopted remedial measures, *see* Fed. R. Evid. 407, so much as a question of whether the government's representations to this Court—which, in effect, recognize that the Corps has not been living up to its legal duties—render our review more or less important.

this case, and I have no doubt the government will make good on its representations to this court. I recognize also that en banc consideration should be reserved for only the most important cases. But the requirements of the Clean Water Act are important. It is often easier in the short run to diminish natural resources, but then environmental degradation is so often the product of short-sightedness. Our circuit is experiencing this first-hand. West Virginia is witnessing in the Appalachian headwaters the long, sad decline that Virginia and Maryland have seen with the Chesapeake Bay. Once the ecologies of streams and rivers and bays and oceans turn, they cannot be easily reclaimed. More often than not, the waterway is simply gone for good.

I thank my colleagues on the panel for their thoughtful consideration of this issue, and I respectfully dissent from the denial of rehearing en banc. I am pleased that Judge Motz joins me in this dissent.

MICHAEL, Circuit Judge, dissenting from the denial of rehearing en banc:

I respectfully dissent from this court's denial of rehearing en banc on the issue of whether the U.S. Army Corps of Engineers erred in approving permits that allow surface mining overburden to be placed into headwater streams, eliminating the streams and adjacent valleys. I recognize that it is not our role to second-guess the expertise of a regulatory agency, but we must nevertheless ensure that the Corps fulfills its duties under controlling law. In this case, the Corps has simply failed to do its job.

In the context of mountaintop removal mining, the Corps' § 404(b) dredge and fill regulations require the agency to assess the "nature and degree of effect" that discharges of mining overburden into headwater streams will have "on the structure and function of the aquatic ecosystem and organisms." 40 C.F.R. § 230.11(e) (2006). At a minimum, the regu-

lations require some assessment of both stream structure and stream function. The Corps' failure to assess stream function in this case and its later claim that an assessment of stream structure provides an adequate substitute cannot amount to a permissible construction of the regulations.

The ecological impact of filling headwater streams with mining overburden is both profound and irreversible. As the Corps itself acknowledges, "[i]t is well understood that the health of entire watersheds [is] dependent on functions provided by headwater streams." J.A. 1823 (Black Castle combined decision document). The Corps goes on to explain that headwater streams provide a number of "important functions" including maintenance of natural discharge regimes, regulation of sediment export, retention of nutrients, processing of terrestrial organic matter, and exportation of water nutrients and organic matter to downstream areas. *Id.* The Corps does not credibly claim to have measured these functions for the permits at issue in this case.

Because the long-term environmental impacts of destroying headwater streams are not yet fully understood, permitting the filling of these streams without requiring the Corps to comply with its clear duty to assess functional impacts fatally undercuts the purpose of the regulations. The Corps' Clean Water Act regulations require the agency to certify that any discharge of fill material will not cause or contribute to "significant degradation of the waters of the United States." 40 C.F.R. § 230.10(c) (2006). Without the information provided by a functional assessment, the Corps cannot make that determination. No permit should issue until the Corps fulfills each distinct obligation under the controlling regulations. And this court should not defer to the Corps until the agency has done its job.

Judge Motz joins in this dissent.